IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

WILLIAM GIACONE,

    Plaintiff,

    v.

VIRTUAL OFFICEWARE, LLC, DAVID HAREL,

    Defendants.

13cv1558
**ELECTRONICALLY FILED**

## Memorandum Order Denying Summary Judgment

This is a breach of contract action brought by Plaintiff, a former employee and minority shareholder of Virtual Officeware, LLC (VOW), who claims that Defendants breached his Employment Agreement in numerous respects.[1] Plaintiff, in turn, seeks to recover alleged unpaid wages pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL"). 40 P.S. § 260.1, *et seq*.[2] Defendants filed Counterclaims against Plaintiff also alleging that he breached the applicable Employment Agreement, including breach of restrictive covenants. This case is scheduled for a non-jury trial to commence on December 1, 2014. Pending before this Court is Defendants' Motion for Summary Judgment (doc. no. 42), and Plaintiff's Response in Opposition thereto (doc. no. 47).

Summary judgment is only proper when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P.

---

[1] This case was originally brought in the Court of Common Pleas of Allegheny County, but was properly removed on the basis of diversity pursuant to 28 U.S.C. § 1446(b). Plaintiff is a citizen of the State of New York, while Defendant Virtual Officeware, LLC, is a citizen of Pennsylvania, and Defendant David Harel is a citizen of the sovereign nation of Israel.

[2] The WPCL provides a statutory remedy when an employer breaches a contractual obligation to pay earned wages, but it does not create a right to compensation. *Donaldson v. Informatica Corp*., 2009 WL 4348819 (citing *DeAsencio v. Tyson Foods, Inc*., 342 F.3d 301, 309 (3d Cir. 2003)).

56(c)(2); *Horn v. Thoratec Corp.*, 376 F.3d 163, 165 (3d Cir. 2004). In reviewing a motion for summary judgment, the role of the Court is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury [fact finder] could return a verdict for the nonmoving party." Am. *Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 581 (3d Cir. 2009). If so, summary judgment will not be granted.

The district court must view all of the facts in the light most favorable to the non-moving party, who is entitled to "every reasonable inference that can be drawn from the record," and if "there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Reedy v. Evanson*, 615 F.3d 197, 209 (3d Cir. 2010) (quoting *Merkle v. Upper Dublin Sch. Dist.,* 211 F.3d 782, 788 (3d Cir. 2000) and *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982)). A party cannot, however, defeat a motion for summary judgment by pointing to fragmentary inferences that could be massaged to support his or her position. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

A brief review of the factual history reveals that VOW provides software solutions to physicians' practices in their healthcare management needs. Plaintiff is a former employer of VOW, where he worked as a Regional Sales Manager, and commenced his employment with Defendants in 2007. The Employment Agreement which is the subject of this litigation was entered into between the parties on December 31, 2012, and was one of several contracts that formed the basis for VOW's acquisition of all of the assets of Virtual OfficeWare, Inc. (VOW, Inc.), of which Plaintiff held a minority shareholder role, as well as an employee. The parties were each represented by legal counsel on the matter and executed what Plaintiff terms as a

"fully integrated" Employment Agreement, that was subject to a two (2) year term.  Plaintiff was the only regional sales manager who was subject to an employment agreement.

In the spring of 2013, the corporate restructuring was announced to the sales force and the parties began to attempt to negotiate a new employment agreement.  On June 28, 2013, VOW, pursuant to a change in corporate structure, implemented a restructuring of its sales staff and commission structure, which Plaintiff alleges were contrary to the terms of his Employment Agreement.[3]  Specifically, Plaintiff alleges that he was no longer to be paid commission on sales to existing accounts; rather he was restricted to earning commission on new accounts.  Accordingly to Plaintiff, this change eliminated the source of 50% of his commissions, and another 4% of the "override" commissions in the Employment Agreement.  Plaintiff further alleges that he lost his car allowance, and became ineligible for the bonuses which were provided for in the Employment Agreement.

On June 28, 2013, the same day Plaintiff received notice of the restructuring, Plaintiff "delivered" to Defendants a letter wherein he "insisted" that Employment Agreement be respected, and that his status as Senior Executive be restored.  Plaintiff further demanded a lump sum payment (increased from $66,000 to $95,000).  Doc. No. 46 at ¶ 110.  On July 3, 2013, Defendant Harel responded by email stating:  "[W]e are changing the [employment] agreement, you are giving up a few items, let's identify them and price them  . . . Finally, a detailed commission sheet cannot be included [in the modified agreement].  I will not have this colossal

---

[3] There is a significant factual dispute regarding whether Schedule A was incorporated into the Employment Agreement.  Defendants contends that Plaintiff submitted an "erroneous" and "improper formula for calculating commissions," while Plaintiff contends that he was aware that the commission formula that appeared on Schedule A was not the formula VOW used, "because it was more favorable and accurately reflected [Plaintiff's] intentions."  Doc. No. 46 at ¶ 33.  Defendants argue that the Schedule A was attached by mutual or unilateral mistake or fraud and then argues facts to support their position, and that the Court should employ its equitable powers to eliminate Schedule A from the Employment Agreement.

mess every time we add a product to our price list or change the commission model on a product." Doc. No. 1-2 at Exhibit C.  According to the declaration of Plaintiff, the July 3, 2014 email from Defendant Harel conveyed to Plaintiff that there would never be a commission schedule attached to a modified agreement and he therefore concluded that Harel had no intention of adhering to the terms of the Employment Agreement at issue.  Doc. No. 48-10 at ¶¶ 23-25.

It is Plaintiff's position that the content of the above response caused him to believe that Defendant had no intention of adhering to the terms of the Employment Agreement.  Therefore, on the same day, at 6:20 p.m., on July 3, 2014, Plaintiff's (prior) attorney transmitted an email to Defendant to which he attached a letter notifying Defendants that he was exercising his rights to terminate the Employment Agreement for cause if Defendants failed to cure their breaches within five (5) days (the letter stated, among other things, that it "serve(s) as a notice of termination pursuant to Section 4 of the Employment Agreement to be effective if the existing Employment Agreement terms are not respected/restored by July 8, 2013.")  Doc. No. 46 at ¶ 135.  Doc. No. 1-2 at Exhibit D.  The letter was emailed and sent by regular mail.  Doc. No. 46 at ¶ 122, 123.  At 6:32 p.m., on July 8, 2013, having received no response (although the parties agree that Defendants had met and discussed the issues raised in Plaintiff's letter) Plaintiff (through his prior counsel) sent his official notice of resignation/termination via email and regular mail.  Doc. No. 1-2 at Exhibit E.

Then, on July 9, 2014, at 10:26 a.m., Defendant Harel responded to Plaintiff's letter and in it indicated that the ongoing issues were VOW's fault and that he did not hold anyone else responsible for the outcome.  Also, Defendant Harel communicated in it that "we are willing, able, and ready to execute the agreement that Joe [prior attorney] drafted last week."  Doc. No.

4

46 at ¶ 146. The parties never executed a modification to the Employment Agreement, and on July 11, 2013, Defendant learned that Plaintiff had accepted employment with a competitor of VOW. Plaintiff began working for the competitor on July 18, 2013.

Plaintiff terminated his Employment agreement allegedly on the basis of "Good Reason" under Section 4(c). Defendants contest that Plaintiff had "Good Reason" to actually do so, and they also contest whether the procedural notice provisions were properly complied with by Plaintiff, prior to his termination.

Judging the operative facts in the light most favorable to Plaintiff, as the non-moving party,[4] the Court finds that numerous material factual issues preclude summary judgment in this matter.[5] There are factual issues surrounding whether Defendants (and/or Plaintiff as well) breached the Employment Agreement and whether the breach(es) were material.[6] Additionally, there are factual determinations to be made regarding whether Schedule A was appended to the Employment Agreement as Defendants claim, by mutual mistake, unilateral mistake, or otherwise, and therefore, should be stricken. Also, there are factual issues to be resolved by a fact-finder regarding whether the notice to cure was effective or whether it failed to comply with the procedural requirements of the Employment Agreement for terminating "for Good Reason." Finally, with respect to the notice provisions, there are factual issues surrounding whether the

---

[4] Plaintiff contends that Defendants' breach of contract Counterclaim against Plaintiff for approximately $14,459.70 cannot be resolved on summary judgment. In Defendants' Second Counterclaim they allege breach of restrictive covenants under the Employment Agreement, and demand injunctive relief. Neither party has moved for summary judgment with respect to Plaintiff's alleged breaches of the restrictive covenants.

[5] Pennsylvania law requires that a plaintiff seeking to proceed with a breach of contract action must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003).

[6] The issue of materiality of a breach is a question of degree involving a factual application, and must be determined after examining several factors as set forth in the Restatement (Second) of Contracts § 241. *International Diamond Importers, Ltd. v. Singularity Clark,* L.P. 40 A.3d 1261, 1272 (Pa. Super. 2012)(citations omitted).

5

breaches by Defendants were so "material" that Defendants cannot insist on strict compliance with the procedural requirements of the Employment Agreement because the occurrence of the condition precedent (notice by mail) was not a material one since Defendants received actual notice, and had already repudiated the contract.

For these reasons, Defendants' Motion for Summary Judgment (doc. no. 42) is HEREBY DENIED.  This Court hereby schedules a status conference to occur before the undersigned on August 22, 2014 at 9:00 a.m.

**SO ORDERED** this 5th day of August, 2014.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties